UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
EVAN GOZALI, by his next friend HARRIET
GOZALI, HARRIET GOZALI, and ZACHARY
GOZALI,

                Plaintiffs,

      -against-                                 COMPLAINT
                                                   DOCKET NO.
125 WEST 96th STREET OWNERS CORP. and
JEFFREY DEMARCO, LISA LEHR, DAVID        15 CV 1183
GALLO, CHRISTOPHER KNISLEY, and           (DLC)
ANNE CHENEBENOIT, AS THE BOARD
OF MANAGERS OF
THE 125 WEST 96th STREET OWNERS
CORP.,

                Defendants.
-------------------------------------------------------------X

## INTRODUCTION

1. Plaintiff Evan Gozali ("Evan"), a person with a disability, has, for over 15 years resided in Apartment 1F at a cooperative apartment building located at 125 West 96th Street, New York, New York that is governed by Defendant 125 West 96th Street Owners Corp. ("Co-operative") The current owner of the apartment, Federation Employment & Guidance Service, Inc. ("FEGS") is looking to sell the apartment and Evan's mother Harriet Gozali ("Harriet") and brother Zachary Gozali ("Zachary") wish to purchase the apartment so that Evan can remain in the apartment. However, the Board of Managers of the 125 West 96th Street Owners Corp., comprised of Defendants Jeffrey DeMarco, Lisa Lehr, David Gallo, Christopher Knisley and Anne Chenebenoit, are refusing to allow Harriet and Zachary to purchase the apartment on the ground that they will not be residing in the apartment. As Evan, because of his disabilities, cannot contract to purchase the apartment himself, the refusal of the Defendants to allow Harriet

and Zachary to purchase the apartment so that their son and brother respectively can reside in the apartment discriminates against persons with disabilities in violation of the Federal Fair Housing Act (42 U.S.C. §3601 et seq) and New York State Human Rights Law (Executive Law §292 et seq) and New York City Human Rights Law (Administrative Code §8-107[5][a]).  Additionally, the Defendants' demand that the new service provider to Evan have an office in the co-operative where such office is unnecessary for Evan to continue to reside in the building also violates the Federal Fair Housing Act and the New York State and New York City anti-discrimination laws.

### JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 and 42 U.S.C. §3613.  This Court also has supplemental jurisdiction over the State and local law claims made in this action.

3. As all of the parties except for Zachary reside in the Southern District of New York, venue lies in this district pursuant to 42 U.S.C. §1391.

### PARTIES

4. Plaintiff Evan Gozali is a person with a disability who resides at 125 West 96th Street, New York, New York.

5. Plaintiff Harriet Gozali is the mother of Plaintiff Evan Gozali and lives in New York, New York.

6. Plaintiff Zachary Gozali is the brother of Plaintiff Evan Gozali and while a United States citizen, resides at present in London, England.

7. Defendant 125 West 96th Street Owners Corp. is, upon information and belief, a corporation incorporated in the State of New York and has its main office in New York, New York.

8. Defendants Jeffrey DeMarco, Lisa Lehr, David Gallo, Christopher Knisley and Anne Chenebenoit are members of the Board of Managers of the Defendant and all reside at 125 West 96th Street, New York, New York.

## FACTS

### A. Evan Gozali

9. Evan Gozali is a person with a disability who has lived in Apartment 1F at 125 West 96th Street, New York, New York for over 15 years. He has lived in the Building for over 18 years.

10. Evan has been diagnosed with Asperger's Syndrome, a disability on the autism spectrum, characterized by deficits in executive, organizational and social skills. He receives Federal and State disability benefits.

11. Evan's disability substantially limits his ability to manage his life and prevents him from being able to contract to purchase his apartment by himself. He needs the assistance of someone else, in this case his mother and his brother, to contract to purchase and purchase the apartment.

12. Indeed, correspondence from the Cooperative through its attorney indicates that the Cooperative deems Evan to be a person with a disability.

13. While the Cooperative made allegations four years ago that Evan was overflowing his bathtub and unnecessarily making emergency calls to the New York City Fire Department, those allegations proved to be unfounded and the Cooperative has never taken any steps to evict Evan from his apartment.

**B. Evan's Mother and Brother Seek to Purchase the Apartment.**

14. Apartment 1F at 125 West 96th Street, New York, New York has been owned by FEGS for the past 18 years.

15. FEGS has also provided services to Evan during the time it has owned the apartment.

16. FEGS now wishes to sell the apartment, along with four other apartments it owns in the Cooperative.

17. Harriet and Zachary would now like to purchase the apartment from FEGS so their son/brother is able to remain in Apartment 1F, where he has lived for over 15 years.

18. FEGS has accepted the offer of Harriet and Zachary and entered into a contract with them.

19. Harriet and Zachary have more than sufficient means to be able to purchase and maintain the apartment.

20. To that end, Harriet and Zachary filed an application to purchase the apartment with managing agent Century Management Services, Inc. on December 11, 2014, including the necessary application fees.

21. The proprietary lease for the Cooperative states that non-occupant investors may purchase units in the building.

22. The Cooperative's application provides for the possibility that the purchaser of an apartment in the building would not be residing in the building.

23. The Cooperative's managing agent cashed the checks Harriet and Zachary provided for the necessary application and related fees.

### C. The Cooperative Says "No".

24. In a letter dated January 9, 2015, the Cooperative, through its attorney Steven D. Sladkus, Esq., responded to the application of Harriet and Zachary to purchase the apartment.

25. Although (i) the proprietary lease allows for non-resident investors to purchase units in the building, (ii) the Cooperative's application provides for the possibility that the purchaser of an apartment in the building would not be residing in the building, and (iii) the Cooperative's managing agent cashed the application fee checks provided by Harriet and Zachary, Mr. Sladkus' letter stated that the Cooperative would not accept non-occupant owners.

26. With regard to Harriet and Zachary who are the mother and brother of Evan respectively, Mr. Sladkus wrote:

> The Cooperative is entitled to seek only shareholders who actually intend to reside in the Building because residents who are personally and financially tied to the building are invariably more invested in the upkeep of their apartments, the wellbeing and day-to-day functioning of the Building and in developing good and peaceful relationships and camaraderie with their fellow shareholders.

27. With regard to Evan, Mr. Sladkus wrote:

> FEGS maintains an on-site office at the Building, so its staff consisting of certified home care attendants, registered nurses, and care coordinators may provide, as its website states, <u>daily</u> and <u>immediate</u> support services to physically frail, cognitively impaired or developmentally or psychiatrically disabled individuals, including by helping with their daily living skills, personal care, treatment plans, housekeeping and more…
>
> We understand that FEGS intends to sell its apartments and vacate the Building, after which time there will be no on-site provider of the services Evan so clearly needs to live and function safely and disturbance free.

28. In actuality, the FEGS office at 125 W. 96th Street is in the dining/entry area of Apartment 1H (which is another apartment FEGS owns in the building) that is resident-occupied. This office never was staffed 24/7. Two years ago, FEGS relocated its Manhattan IRA office to 3333 Broadway, since which time the 96th Street office in 1H is used by staff who are in and out when they are working with their residents at 96th Street.

29. When Evan has needed the services of FEGS staff, his practice is to ring 1H to see if staff is there, or to contact the Residence Manager by phone, or to wait to speak with staff at his next scheduled visit which are twice a week, or to contact his mother with a concern requiring immediate attention. Evan has not relied upon staff at the office to be able to live peaceably in the Building.

30. Consequently, based upon unjustified conclusions about the interest of Harriet and Zachary in caring about their son/brother's apartment building and, based upon unjustified conclusions about Evan's disability and needs, the Cooperative stated through Mr. Sladkus' letter that it would not consider the application of Harriet and Zachary to purchase the apartment.

31. Mr. Sladkus' letter made no mention about the ability of Harriet and Zachary to purchase or financially maintain the apartment.

32. Counsel for Harriet and Zachary wrote a reply to Mr. Sladkus dated January 15, 2015.

33. The reply letter noted that the proprietary lease allows for non-occupant owners, that the Cooperative's application also contemplates non-occupant owners, that the managing agent had already cashed the checks from Harriet and Zachary, and that as the mother and brother of the occupant, Harriet and Zachary would certainly take an interest in the Building.

34. The reply letter also stated that Harriet and Zachary had arranged for the appropriate services to be provided to Evan based on the assessment of Evan and his needs by the New York State Office for People With Developmental Disabilities ("OPWDD"), the State agency with jurisdiction over persons like Evan with Developmental Disabilities.

35. The Cooperative never responded to that letter, and in spite of that letter, the Cooperative is still refusing to allow Harriet and Zachary to purchase the unit to allow Evan to remain in the apartment he has peaceably lived in for the past 15 years.

36. Century Management Services, the managing agent for the Cooperative, sent a check back to Harriet in the sum of the application and related fees, presumably at the direction of the Cooperative.

37. On the other hand, at roughly the same time as the managing agent sent a check back to Harriet in the sum of the application fee, upon information and belief, the Cooperative expeditiously approved the sale of another FEGS unit to an outside purchaser that will result in the removal of a person with developmental disabilities from the Building.

38. Upon information and belief, members of the Board of Managers and other residents of the Building have been heard to make derogatory comments about disability-related behaviors of residents served by FEGS as well as about their presence as residents.

39. The Cooperative's refusal to permit Harriet and Zachary to purchase the unit to allow Evan to remain in the building where he has peaceably lived in for the past 18 years and in the apartment he has peaceably lived in for the past 15 years is based on conclusory, speculative, unjustified, and pretextual concerns about Evan's disability and conclusory, speculative, unjustified, and pretextual concerns about Harriet and Zachary's interest in the building, and as such, constitutes intentional discrimination on the basis of Evan's disability in violation of the Federal Fair Housing Act, the New York State Human Rights Law, and the New York City Human Rights Law.

40. The Cooperative's refusal to make any reasonable accommodation in its rules and practices if necessary to permit Harriet and Zachary to purchase the unit to allow Evan to remain in the building he has peaceably lived in for the past 18 years and in the apartment he has peaceably lived in for the past 15 years constitutes discrimination on the basis of Evan's disability in violation of the Federal Fair Housing Act, the New York State Human Rights Law, and the New York City Human Rights Law.

41. The Cooperative's implication that Evan can only live in the Building if there is a fully-staffed 24/7 office where Evan does not need such office places unnecessary terms and conditions on Evan because of his disability not placed on other residents and constitutes discrimination on the basis of Evan's disability in violation of the Federal Fair Housing Act, the New York State Human Rights Law, and the New York City Human Rights Law.

## COUNT I-FEDERAL FAIR HOUSING ACT

42. Plaintiffs reallege all of the allegations contained in paragraphs "1" through "41" above.

43. Evan is a person with a handicap as that term is defined under the Federal Fair Housing Act, and Harriet and Zachary also have standing under that statute.

44. As stated above, Evan has a disability that substantially limits one or more of his major life activities and the Defendants concede that point.

45. By failing to accept and approve the application of Harriet and Zachary to purchase the apartment in question even though sales to non-occupant purchasers are permissible in the Proprietary Lease, the Defendants are engaged in intentional discrimination against the Plaintiffs on the basis of Evan's disability in violation of the Fair Housing Act.

46. By failing to make a reasonable accommodation to the Cooperative's rules and practices in order to accept and approve the application of Harriet and Zachary to purchase the apartment in question if one is necessary due to Evan's disability, the Defendants are engaged in discrimination against the Plaintiffs on the basis of Evan's disability in violation of the Fair Housing Act.

47. By failing to accept and approve the application of Harriet and Zachary because of some factually unjustified conclusions about Evan with regard to his disability and by placing unnecessary terms and conditions on Evan's residency because of his disability not placed on other residents of the Building, the Defendants are engaged in intentional discrimination against the Plaintiffs on the basis of Evan's disability in violation of the Fair Housing Act.

48. By interfering with the right of Harriet and Zachary to purchase the apartment in question, the Defendants are in violation of 42 U.S.C. §3617 of the Federal Fair Housing Act by interfering with the right of Evan to live in the housing of his choice which is a right guaranteed under the Federal Fair Housing Act.

## COUNT II- NEW YORK STATE HUMAN RIGHTS LAW

49. Plaintiffs reallege all of the allegations contained in paragraphs "1" through "48" above.

50. Evan is a person with a disability as that term is defined under the New York State Human Rights Law, and all of the Plaintiffs have standing to bring an action under that law.

51. For the reasons stated in paragraphs "45" through "48" above, the Defendants are engaged in discrimination against the Plaintiffs on the basis of Evan's disability in violation of the New York State Human Rights Law.

## COUNT III-NEW YORK CITY HUMAN RIGHTS LAW

52. Plaintiffs reallege all of the allegations contained in paragraphs "1" through "51" above.

53. Evan is a person with a disability as that term is defined under the New York City Human Rights Law, and all of the Plaintiffs have standing to bring an action under that law.

54. For the reasons stated in paragraphs "45" through "48" above, the Defendants are engaged in discrimination against the Plaintiffs on the basis of Evan's disability in violation of the New York City Human Rights Law.

WHEREFORE, it is respectfully requested that this Court:

1) Direct the Defendants to consider and approve the application of Plaintiffs Harriet Gozali and Zachary Gozali to purchase Apartment 1F at 125 West 96th Street, New York, New York.

2) Enjoin the Defendants from approving the sale of Apartment 1F at 125 West 96th Street, New York, New York to any prospective purchaser other than Plaintiffs Harriet Gozali and Zachary Gozali.

3) Award Plaintiffs compensatory and punitive damages against the Defendants.

4) Award Plaintiffs attorneys fees against the Defendants.

5) Order such other relief as it deems appropriate.

Dated: Garden City, New York
       February 18, 2015

                          MORITT HOCK & HAMROFF LLP

                          Attorneys for Plaintiffs

                          By: _____

                          ROBERT L. SCHONFELD (RS7777)
                          400 Garden City Plaza
                          Garden City, New York 11530
                          (516) 873-2000

688749v1